UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                              CRIMINAL NO. 3:19-CR-260-KHJ-LGI

DANIEL ROBERT


ORDER

Before the Court is Daniel Robert's [157] Motion for Judgment of Acquittal, or, in the Alternative, for a New Trial. Having considered the motion, the record, and relevant legal authority, the motion is denied.

I.      Facts and Procedural History

On November 6, 2019, a federal grand jury indicted Daniel Robert, Dalisha Robert, and Danita Robert in a two-count indictment—each for the offense of obstructing justice in violation of 18 U.S.C. §§ 2, 1512(b)(1). *See* Indictment [3].

Trial began on July 19, 2022. After hearing testimony from witnesses and listening to dozens of jail calls, the jury unanimously found Daniel guilty of both counts. [142]. They acquitted Danita and Dalisha. *Id.* Daniel moved orally for judgment of acquittal under Federal Rule of Criminal Procedure 29 after the Government's case-in-chief. The Court denied the motion. He now moves for a judgment of acquittal or, in the alternative, a new trial under Federal Rules of Criminal Procedure 29(c) and 33(a). Mot. J. Acquittal [157].

II.     Legal Standard

On a motion for judgment of acquittal, a court "consider[s] whether the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). This standard is highly deferential to the jury and "asks whether a reasonable jury could conclude that the relevant evidence . . . established all of the essential elements of the crime beyond a reasonable doubt when viewed in the light most favorable to the verdict." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). "The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . ." *Id.* Rather, "[a] jury is free to choose among reasonable constructions of the evidence . . . [a]nd it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id.* (citations omitted). "In effect, the court assumes the truth of the evidence offered by the prosecution." *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997).

"[A] motion for new trial is reviewed under a more lenient standard than a motion for judgment of acquittal." *Id.* "The trial judge may weigh the evidence and may assess the credibility of the witnesses. . . ." *Id.* Though the decision "is within the sound discretion of the trial court[,] . . . [t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Id.* at 1118. To grant a new trial, "[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.*

2

III.   Analysis

Robert seeks a judgment of acquittal or, in the alterative, a new trial on three grounds. The Court addresses each argument in turn.

A.  Sufficiency of the Evidence

Robert first challenges the sufficiency of the evidence introduced at trial. [157] at 8 (arguing that Robert's jail calls are not "criminal conduct" and are "rants with no[ ] basis in reality").

To begin, Robert does not explain how the evidence was somehow insufficient. Instead, he concludes that, because the jury found his co-defendants not guilty, the evidence does not support his conviction. [157] at 5. Given the lack of specificity in Robert's motion, the Court will not offer an extensive review of the evidence.

Suffice to say, the evidence of Robert's guilt was sufficient to sustain a verdict. Significantly, the jury listened to many hours of recorded jailhouse telephone calls, including several incriminating calls Robert made during pretrial detention. Robert instructed his co-defendants to tell others, including M.M. and L.R., to change their statements and take full responsibility for the charges. *See* Exs. G-18, G-19(a)–G-19(g). He told the callers to encourage potential witnesses to evade the Government's efforts to serve their trial subpoenas. *Id.* In one call, Robert dictates to Danita the contents of an affidavit he wanted L.R. to sign taking "full responsibility" for the drugs seized in 2009. In that same call, he instructed Danita to tell a potential witness to "miss them subpoenas." *Id.* Robert also gave

3

instructions that L.R. and M.M.'s pictures should be posted on social media and labeled government cooperators. He repeatedly told Dalisha that "if he [(L.R.)] is playing with my life, he [(Robert)] can play with his too." *Id.* And he told an unknown male to tell M.M. that he does not have to testify or show up despite a subpoena. *Id.*

The Court has reviewed the record and the evidence presented at trial. Based on that review, the Court is satisfied that the evidence was more than enough to support the jury's verdict to convict Robert. Therefore, a judgment of acquittal or new trial is not warranted on this basis.

B.  Juror Misconduct

Robert next complains of the Court's denial of his motion for a mistrial related to the jurors. He contends that Juror 6's comments denied him his right to a fair and impartial jury, and he is entitled to a new trial. [157] at 5.

The relevant facts are as follows. On day two of trial, a Court Security Officer informed the Court that Juror 6 needed to get a message to the Court. He asked Juror 6 what the message was. She said that she was a Federal Bureau of Prisons employee.[1] She had concerns that if the Defendants were found guilty, they could be housed where she worked. She also informed the Court Security Officer that she had been assaulted by an inmate before at work. That same day, the Court discussed with the parties the procedure it would take to respond to the juror's concerns. The Court informed the parties that it would voir dire Juror 6 first, and

---

[1] Juror 6 revealed during jury selection that she worked for the Federal Bureau of Prisons in Yazoo City, Mississippi.

then each juror individually, to assess the extent of Juror 6's concerns and any discussions of those concerns with other jurors.

Before trial resumed, the Court questioned each juror, starting with Juror 6, in the presence of the Defendants and counsel for all parties. Juror 6 stated that she expressed her belief to other jurors that her BOP employment presented a potential conflict of interest. She supposed that, if convicted, the Defendants could be housed where she worked. She discussed with some jurors that she asked her BOP supervisor and a BOP attorney whether her jury service was a conflict of interest, and she then conveyed to at least some of the jurors that she wanted the Court Security Officer to know of this potential conflict.

Juror 6 mentioned to at least one other juror that she had an earlier bad experience during her BOP employment—which was an inmate assault—and that she was seeking counseling for that assault. During this voir dire, Juror 6 was emotional and visibly upset. She said that she did not sleep well the previous night. The trial experience seemingly brought back feelings and emotions from her BOP assault. Given her state of mind, the Court did not believe she could fairly and impartially carry out her duties. The parties and the Court agreed that Juror 6 should be relieved of her jury service, and she was dismissed.

The Court then questioned each remaining juror (11 jurors and 2 alternates), separately and under oath in the presence of the Defendants and counsel. Although the Court asked the questions, all counsel had the opportunity to provide the Court with any questions they had for each juror. The Court explored how much each

juror heard of Juror 6's comments about her employment conflict of interest and earlier assault. The Court had the opportunity to hear each juror's response and see the juror's face and body language as they responded. Each juror affirmed that nothing they heard from Juror 6 would affect their ability to be fair and impartial to the Defendants. Each juror affirmed that they would decide the case and render a verdict based only on the evidence they heard in the courtroom and nothing else. And finally, each juror affirmed that they would follow the Court's instructions on the law and any other instruction given to them by the Court.

The Defendants moved for a mistrial based on the jury conduct, and the Court denied the request. Mot. Decl. Mistrial [137]; July 21, 2022 Text Order. Robert now asks that Court for a new trial based on that ruling.

"In any trial, there is an initial presumption that the jury is impartial." *United States v. Kelley,* 140 F.3d 596, 608 (5th Cir. 1998). That presumption can be overcome, though, by "evidence that an extrinsic factual matter actually tainted the jury's deliberations." *Id.* Only upon such a showing does a defendant receive a rebuttable presumption that entitles him to a new trial. *Id.*

The district court maintains broad discretion to decide matters of impartiality. And that discretion is especially broad in matters of intrinsic influence. *See United States v. Sotelo*, 97 F.3d 782, 796 (5th Cir. 1996); *see also United States v. Webster*, 750 F.2d 307, 338 (5th Cir. 1984) (emphasizing that the Fifth Circuit declines to presume prejudice from intrinsic influences because it would hamper the trial judge's discretion). Because the district court is in a "unique

6

perspective at the scene, [it] is in a far superior position than [the Fifth Circuit] to appropriately consider allegations of juror misconduct, both during trial and during deliberations." *United States v. Ebron*, 683 F.3d 105, 126 (5th Cir. 2012).

Robert's argument couches Juror 6's comments about her employment conflict and earlier assault as extrinsic influences that rise to the level of prejudice. [157] at 6. Not so. Under Fifth Circuit precedent, jurors' fears or safety concerns are neither extrinsic influences nor sufficient grounds for a new trial. *See United States v. Nieto*, 721 F.3d 357, 370–71 (5th Cir. 2013) (upholding district court's denial of motion for a mistrial based on jury's expression of safety concerns during trial); *see also Kelley*, 140 F.3d at 608–09 (finding no evidence of outside or extrinsic influence where the jury conveyed hesitation to return a verdict because some jurors were afraid for their and their families' safety). Here, because Juror 6's concerns arose during the trial, those concerns are intrinsic and evaluated using the Court's broad discretion. *See United States v. Scott*, 576 F. App'x 409, 413 (5th Cir. 2014) (per curiam) (explaining that feelings developed by juror during trial are generally intrinsic).

The Court relieved Juror 6 of jury service upon realizing she could not be fair and impartial given her state of mind. All remaining jurors confirmed that they were not unduly influenced by anything Juror 6 may have said. And they confirmed that they would continue to follow the Court's instructions and remain fair and impartial. Consequently, because there is no evidence of extrinsic influence, and the Court conducted a thorough injury of Juror 6's comments before continuing with

trial to ensure fairness, Robert fails to make an adequate showing that an extrinsic factual matter actually tainted the jury's deliberations. A judgment of acquittal or new trial is not warranted on this basis.[2]

### C.  Denial of Impeachment

Finally, Robert contends that the Court erred by precluding his counsel from cross-examining FBI Agent Jeremy Keyes with his 302 reports without first reviewing the reports outside the presence of the jury. [157] at 7. During Agent Keyes' cross-examination, the Court allowed Robert's counsel to refresh Agent Keyes' recollection with his 302 reports. But the Court did not allow counsel to admit into evidence the 302 reports that contained hearsay statements of the victims, L.R. and M.M, because they were not called as witnesses by the Government or any Defendant. And Robert provided no exception to the hearsay rule that allowed the documents' admissibility.

Robert, relying on *United States v. Gaston*, insists the Court had an obligation to make an in-camera view of the report before ruling on its admissibility. 608 F.2d 607, 613 (5th Cir. 1979). [157] at 7. His argument is misguided for two reasons. First, *Gaston* does not establish that obligation. *Gaston* discusses a trial court's obligation to make an in-camera review of *Brady* material before ruling on

---

[2] Robert makes a passing reference in his motion that his rights were violated because "several of the jury member[s] expressly stat[ed] their doubts that they could maintain a presumption of innocence for [a] defendant who did not testify." [157] at 6. But the venire members who expressed these doubts were not ultimately selected as trial jurors. Robert can show no prejudice from that.

its *discoverability*. *See Gaston*, 608 F.2d at 613. The Government had produced the documents to all Defendants, so *Brady* is not at play.

Robert continues that the Court erred because, as *Gaston* instructs, "it was error for the trial court to rely on the assurances of the prosecutor and fail to undertake an in-camera investigation of these 302s." [157] at 7. Robert seemingly argues that the Court should have looked at the 302 reports before deciding whether he should be allowed to impeach Agent Keyes with them. And by not doing so, the Court erred. Robert misses the mark again. The Court did see the reports before making the complained of evidentiary ruling. In fact, the Court reviewed the reports at issue the week before trial to rule on Danita Robert's Motion to Compel. *See* Mot. Comp. [134] at 3 n.1. Danita's counsel and the Government provided the reports to the Court before the July 15, 2022, motions hearing. Still, *Gaston*'s holding is in the context of discoverability rather than admissibility and does not require the Court to make an in-camera inspection before ruling on the admissibility of 302 reports. A judgment of acquittal or new trial is not warranted on this basis.

IV.    Conclusion

The Court has considered all the arguments. Those not addressed would not have changed the outcome. For the reasons stated above, the Court finds that Defendant Daniel Robert has not shown that he is entitled to a judgment of acquittal, or in the alternative, a new trial.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Robert's [157]

Motion for Judgment of Acquittal or, in the Alternative, for a New Trial is DENIED.

SO ORDERED, this the 18th day of January, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE